IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

NADIA MARIE AGUILAR,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-4058

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    INTRODUCTION .................................. 2

II.   PRINCIPLES OF REVIEW ........................... 2

III.  FACTS ......................................... 3
    A.   Aguilar's Education and Employment Background ............ 3
    B.   Administrative Hearing Testimony ...................... 4
        1.   Aguilar's Testimony ........................... 4
        2.   Vocational Expert's Testimony ..................... 4
    C.   Aguilar's Medical History ........................... 5

IV.  CONCLUSIONS OF LAW ............................ 7
    A.   ALJ's Disability Determination ........................ 7
    B.   Objections Raised By Claimant ....................... 10
        1.   Credibility Determination ........................ 10
        2.   RFC Assessment and Hypothetical Question ............. 14

V.    CONCLUSION .................................. 17

VI.  ORDER ....................................... 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Nadia Marie Aguilar on July 6, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Aguilar asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Aguilar requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On September 23, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Aguilar's Education and Employment Background

Aguilar was born in 1977. She completed the tenth grade in school, and dropped out of school in the eleventh grade. She also attended and completed professional truck

driving school. In the past, Aguilar worked as a taxi driver, truck driver, and telephone solicitor.

### B. Administrative Hearing Testimony

#### 1. Aguilar's Testimony

At the administrative hearing, the ALJ inquired why Aguilar believes she is incapable of working. Aguilar responded she cannot work due to mental health and physical limitations. She stated her physical limitations included a "bulging herniated disk with lateral extension that has caused me discomfort all over. I have a lower back injury, and recently fibromyalgia, which has been brought to my attention."[2] She stated she is comfortable standing and sitting for only 5 to 10 minutes at a time. With regard to mental health issues, Aguilar indicated that her primary problem was being anti-social. She stated "I don't do good around people at all. I'm very antisocial. I do most of my grocery shopping at like one or two a.m. normally to avoid crowds and people."[3] Aguilar also testified that she suffers from bipolar disorder, ADHD, OCD, and insomnia. She blames her medication for making her drowsy and sleeping during the daytime.

#### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Steven H. Kuhn with a hypothetical for an individual who could:

> lift up to 20 pounds on occasion, 10 pounds on a frequent basis.
>
> In an eight-hour day, could sit for six hours, stand for six hours, and has unlimited use of the extremities. That her biggest problem seems to be her mental problem around other folks. So, I think we need to be looking at a location and type of work that would minimize the interrelationships. . . .

---

[2] Administrative Record at 45.

[3] Administrative Record at 50.

> Some type of job where they're generally left pretty much alone to be by themselves.
>
> I think again even with the supervisors or coworkers, we would want to have those minimal contacts with those type of folks, but she's intelligent enough. That's not any kind of a problem.
>
> There's no question that she can carry out, understand short and simple instructions. She would have more of a problem if the instructions were detailed so that I think we need to look at a job that doesn't change much. That there wouldn't be detailed changes to the things that she would have to do.
>
> And I think she'd have to avoid vibration as well.

(Administrative Record at 66.) The vocational expert testified that under such limitations, Aguilar could not perform her past relevant work, but could perform the following jobs: (1) maid, (2) production worker, (3) packager, and (4) laundry worker.

### C. Aguilar's Medical History

On October 9, 2013, Aguilar met with Diane Sorensen, LISW, for a mental health assessment. Sorensen noted that Aguilar's primary complaints included anxiety disorder and adult ADHD with focus and attention concerns. Sorensen conducted a mental status examination and found:

> [Aguilar's] behavior is cooperative. Motor activity reveals no apparent abnormalities. . . . [Aguilar] reports mood as stressed. Affect is congruent to mood and Affect is pleasant. . . . [Aguilar] is oriented to person, place and time. [Her] fund of knowledge is fair. . . . [She] reports no memory problems. Intelligence appears average. Insight is fair. Judgment appears fair. [Aguilar] reports sleep is improving.

(Administrative Record at 427.) Upon examination, Sorensen diagnosed Aguilar with panic disorder without agoraphobia, mood disorder, anxiety disorder, and ADHD. Sorensen noted that Aguilar's panic disorder, anxiety disorder, and mood disorder were

5

"improving." Sorensen rated Aguilar's GAF score at 60, and noted she had GAF scores between 55 and 65 since January 29, 2013. Sorensen recommended Aguilar continue individual therapy and medication management as treatment.

On November 6, 2014, Aguilar was referred by Disability Determination Services ("DDS") to Dr. Michael P. Baker, Ph.D., for a psychodiagnostic mental status examination and medical record review. Aguilar reported to Dr. Baker that she suffers from ADHD, bipolar disorder, anxiety disorder, panic disorder, OCD, and mood disorder. Dr. Baker also reviewed Aguilar's activities of daily living:

> [Aguilar] reports her bedtime as usually between 12:00 and 1:00 am with a half hour to sleep onset and then usually awakening about 7:00 am. At that time, she'll help her daughter get off to school and then she is likely to go back to sleep for another couple of hours until she has to attend an appointment. She reports that she spends most of the day watching TV or sleeping because of back pain. She reports that her daughter helps her with many chores. She then did indicate that she does her own cooking and grocery shopping, utilizing food stamps. She does drive and has a CDL though is not able to be employed as a truck driver because "Dr. Jennings wouldn't pass my physical because of my medications."

(Administrative Record at 595.) Aguilar also reported that she goes to the grocery store at odd times to avoid people. Dr. Baker noted "[s]he reported having a panic attack if there are too many people present, but her last one she remembered was when the paramedics were call[ed] back in 2011 or 2012."[4] Aguilar stated she "often worries that she will 'explode' and act out[;] when asked for examples however, she seemed to have behaved fairly appropriately."[5] Upon examination, Dr. Baker diagnosed Aguilar with

---

[4] Administrative Record at 595.

[5] *Id.*

6

mood disorder by history and ADHD. Dr. Baker assessed her GAF score at 55. Dr. Baker concluded:

> In regards to mental limitations related to work activities, [Aguilar] seems to have adequate ability to remember and understand instructions, procedures, and locations. Her present ability to maintain adequate attention, concentration and pace for carrying out instructions in most work settings seems adequate. She interacted today appropriately and by most of the past therapy notes has done so. . . . Her likelihood of functioning on a sustained basis and interacting appropriately with supervisors, co-workers and the public would . . . perhaps be dependent on the social stress level of the job. Similarly, while by history there is not significant impairment in judgment demonstrated, responding appropriately to changes in the work place would be dependent upon level of stress.

(Administrative Record at 596.)

On November 10, 2014, Sorensen performed another mental health assessment for Aguilar. Sorensen again found Aguilar's primarly complaints to be anxiety, ADHD, and mood/emotion concerns. Upon examination, Sorensen diagnosed Aguilar with panic disorder without agoraphobia, mood disorder, and ADHD. Sorensen again noted that Aguilar's symptoms with panic disorder, anxiety, and mood disorder were "improving." Sorensen rated Aguilar's GAF score at 60, and noted she had GAF scores between 55 and 65 since November 18, 2013. Sorensen, again, recommended Aguilar continue individual therapy and medication management as treatment.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Aguilar is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*,

482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and

vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Aguilar had not engaged in substantial gainful activity since December 31, 2012, the amended alleged disability onset date.[6] At the second step, the ALJ concluded from the medical evidence that Aguilar had the following severe impairments: mood disorder, anxiety disorder, ADHD, panic disorder without agoraphobia, schizoaffective disorder, anti-social personality disorder, borderline personality disorder, bilateral leg pain (improved), back pain, and GERD (improved). At the third step, the ALJ found that Aguilar did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Aguilar's RFC as follows:

> [Aguilar] has the residual functional capacity to perform light work . . . she can lift and carry 20 pounds occasionally and ten pounds frequently; sit six hours in an eight-hour workday; stand/walk six hours in an eight-hour workday; and has unlimited use of the extremities. Her biggest problem seems to be her mental problem and being around people. Therefore, we need to look at location and type of work that would minimize the interrelationships. . . . In addition, with supervisors and co-workers would want to have those with minimal contact as well. However, she is intelligent enough and could carry out and understand short and simple

---

[6] At the administrative hearing, Aguilar amended her alleged disability onset date from March 20, 2011 to December 31, 2012. *See* Administrative Record at 13.

> instructions. She would have more of a problem if instructions were detailed, therefore, we would need to look at a job that does not change much and there would be no changes to the things she would have to do. She would also need to avoid vibration.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Aguilar is unable to perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Aguilar could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Aguilar was not disabled.

### B. Objections Raised By Claimant

Aguilar argues the ALJ erred in two respects. First, Aguilar argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Aguilar argues the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed because they are not supported by substantial evidence and do not properly set forth her credible functional limitations.

#### 1. Credibility Determination

Aguilar argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Aguilar maintains the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues the ALJ properly considered Aguilar's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a

claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010).

In his decision, the ALJ addressed Aguilar's subjective allegations as follows:

A review of the medical evidence of record shows that [Aguilar] had been followed by Mr. Reddy and Ms. Sorensen for her mental condition. During this time, Mr. Reddy and Ms. Sorensen noted that [Aguilar's] mental condition had improved. In addition, [Aguilar] also reported improvement in her condition. It was also noted that Ms. Sorensen found that [Aguilar's] mental condition was stable. In addition, [Aguilar's] GAF score ranged from 55 to 65. Also, Dr. Baker opined that [Aguilar's] ability to understand, remember, and carry out instructions was not affected by her impairments and her ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in the routine work setting, was affected by impairments only mildly. (Exhibits 7F, 9F)

The medical evidence also shows that Dr. Jennings completed a DOT physical, which was within normal limits and Ms. Krueger found that [Aguilar's] bilateral leg pain and GERD had improved. (Exhibits 2F, 11F)

There is evidence that [Aguilar] has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as [she] has alleged in connection with this application. [Aguilar] acknowledged that she was not taking her medication. (Exhibit 9F)

In addition, a review of [Aguilar's] work history shows that [she] worked only sporadically prior to the alleged disability onset date, which raised a question as to whether [her] continuing unemployment is actually due to medical impairments. In addition, this was her sixth application for disability benefits. (Exhibits D4-D6, 1E, 13E, 16E)

The record does not indicate the quality of [Aguilar's] daily functioning has been affected as severely as she has alleged, rather she has been able to independently sustain activities and interests over time. [She] completed disability forms and stated that she could stand, walk, or sit for 15 to 20 minutes and then she needs to change position. [Aguilar] reported that

12

she drives. She describes her daily activities as waking up and drinking coffee, smoking cigarettes, waking her daughter up for school and making her breakfast, taking her medications throughout the day, doing the dishes, watching TV, and attending therapy/doctor appointments. In addition, [Aguilar] reported that she goes grocery shopping, cares for her daughter, cares for the cat with help from her daughter, cooks, cleans, does the laundry, pays the bills, reads, watches movies with her daughter, sometimes takes her daughter to the park, goes outside every other day, plays games on computer, and talks to her friends on the telephone. She alleged no difficulty with her personal hygiene. (Exhibits 4E-6E, 9E, 10E)

There are no opinions from treating or examining physicians that indicate [Aguilar] is disabled or has significant functional limitations greater than those reflected above. Nor are there recommendations that she limit her activities or seek further treatment. The objective findings also fail to show [Aguilar's] symptoms are limiting as she has alleged. Her prescribed medications provide adequate, if not total relief, when taken as directed. . . .

In sum, the above residual functional capacity assessment is supported by the record as a whole. Based on the total record, [Aguilar's] symptoms and impairments are not as severe as alleged, and the undersigned has not given great weight to [Aguilar's] implicit allegation that she is unable to engage in any and all kinds of full-time, competitive, gainful employment on a sustained basis.

(Administrative Record at 30-32.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Aguilar's treatment history, medical history, functional restrictions, activities of daily living, work history, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Aguilar's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*,

421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Aguilar's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. RFC Assessment and Hypothetical Question

Aguilar argues that both the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed. Specifically, Aguilar argues the ALJ's RFC assessment and hypothetical questions to the vocational expert are incomplete because they do not properly account for all of her impairments and functional limitations. Thus, Aguilar contends the ALJ's RFC assessment and hypothetical questions are not supported by substantial evidence in the record. Aguilar maintains this matter should be remanded for a new RFC determination based on a fully and fairly developed record, and to allow the ALJ to provide the vocational expert with a proper and complete hypothetical question.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant

14

evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

15

In determining Aguilar's RFC, the ALJ thoroughly addressed and considered Aguilar's medical history and treatment for her complaints.[7] For example, the ALJ thoroughly discussed Aguilar's participation in treatment for her physical health problems, and noted her conditions improved with treatment.[8] Similarly, the ALJ thoroughly discussed Aguilar's participation in treatment for her mental health difficulties, and again, noted her conditions improved with treatment.[9] Furthermore, the ALJ pointed out:

> There are no opinions from treating or examining physicians that indicate [Aguilar] is disabled or has significant functional limitations greater than those reflected above. Nor are there recommendations that she limit her activities or seek further treatment. The objective findings also fail to show [Aguilar's] symptoms are limiting as she has alleged. Her prescribed medications provide adequate, if not total relief, when taken as directed.

(Administrative Record at 31.) The ALJ also properly considered and thoroughly discussed Aguilar's subjective allegations of disability in making his overall disability determination, including determining Aguilars's RFC.[10] The ALJ concluded that the RFC assessment for Aguilar "is supported by the record as a whole."[11]

Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Aguilar's medical records, observations of treating physicians, and Aguilar's

---

[7] *See* Administrative Record at 20-30 (providing an exhaustive and thorough discussion of Aguilar's overall medical history and treatment).

[8] Administrative Record at 20-23; 29-30.

[9] *Id.* at 22-29.

[10] *Id.* at 30-32 (providing a thorough discussion of Aguilar's subjective allegations of disability).

[11] *Id.* at 32.

16

own description of her limitations in making the ALJ's RFC assessment for Aguilar.[12] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Aguilar's assertion that the ALJ's RFC assessment is flawed is without merit.

Similarly, having reviewed the entire record, the Court, again, finds that the ALJ thoroughly considered and discussed both the medical evidence and Aguilar's testimony in determining Aguilar's impairments and functional limitations.[13] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds the ALJ properly determined Aguilar's credibility with regard to her subjective complaints of pain and disability. The Court also finds the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. The ALJ's hypothetical questions to the vocational expert

---

[12] *Id.* at 20-32 (providing a thorough and exhaustive discussion of the relevant evidence for making a proper RFC determination).

[13] *See* Administrative Record at 20-32.

were also sufficient because they properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

### VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 4th day of February, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA